NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

*[signature]*

Signed March 8, 2007                                                                **United States Bankruptcy Judge**

_____

### UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| DARROLD O'KEITH GELLINGTON | § § | Case No. 06-31918 HDH-13 |
| Debtor | § § | |

### MEMORANDUM OPINION ON
### DEBTOR'S MOTION FOR SANCTIONS

This opinion addressees the propriety of a post-petition wage garnishment by the Attorney General for the State of Texas, and whether it was a violation of the automatic stay provision of the Bankruptcy Code in light of § 362(b)(2)(C).

**I.      JURISDICTION**

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 151, and the standing order of reference in this district. The matter is core, pursuant to 28 U.S.C. § 157(b)(2)(A), (G) & (O). This Memorandum Opinion constitutes findings of fact and conclusions of law, pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.

## II.    BACKGROUND FACTS

Darrold O'Keith Gellington ("Debtor") filed this Chapter 13 Bankruptcy proceeding on May 19, 2006. At the time of the filing, Debtor was in arrears for certain child support payments and proposed to pay the amount of $18,046.85 to the Office of the Texas Attorney General, Child Support Division ("Attorney General"), by direct payments outside of his Chapter 13 Plan. Due to the Debtor's failure to make his child support payments, the Attorney General had been garnishing the Debtor's wages pre-petition in the amount of approximately $300.00 per month. Debtor filed his first Chapter 13 Plan on May 19, 2006, an Amended Chapter 13 Plan on June 13, 2006, and a Second Amended Chapter 13 Plan on June 19, 2006. All of these plans provided for $205.00 monthly plan payments and direct payments to the Attorney General for back child support.

The Attorney General filed an objection to confirmation of the Debtor's Second Amended Chapter 13 Plan on June 27, 2006, and requested that the full amount of the arrears be placed in the Plan, and not made by direct payments as proposed by the Debtor. The Debtor agreed to amend his Second Amended Plan to include the child support to resolve the objection of the Attorney General; however, confirmation of the Debtor's Second Amended Plan was denied due to objections filed by the Chapter 13 Trustee and Capital One Auto Finance, the creditor with a lien on the Debtor's vehicle.

The Debtor filed a new Chapter 13 Plan (the "Plan") on October 3, 2006, which gave an agreed interest rate to Capital One and provided for the full claim of the Attorney General to be paid through the Plan on a monthly basis. This change, along with other changes made to the Plan, required the Debtor's plan payments to increase from $205.00

per month for the first five months to $774.00 per month for the remaining fifty-five months of the Debtor's sixty-month Plan.  This change was to have been included in the order confirming the Debtor's Plan ("Confirmation Order") entered by this Court on November 21, 2006; however, the Confirmation Order only required $205.00 per month to be paid over the life of the Plan, as provided in the Debtor's prior Chapter 13 plans that authorized the Debtor to make direct payments to the Attorney General.

Due to some confusion as to which plan was actually confirmed and erroneous information received form the Chapter 13 Trustee's Office, Assistant Attorney General Troy V. Smith caused to be issued an Administrative Writ of Withholding for withholding of $433.00 per month in weekly installments from the Debtor's paycheck.  This Writ was uncontested, and the Attorney General began garnishing the Debtor's wages on December 11, 2006.  One week later, on December 18, 2006, the Chapter 13 Trustee filed a Notice of Correction to Confirmation Order ("Notice of Correction"), which stated the correct payments to be made under the Plan of $205.00 and $774.00, respectively.  Thus, the garnishment effectively caused the Debtor to pay double child support payments, and would cause the Debtor to default in his other Plan payment obligations because he was without sufficient funds to pay the higher amount after his take-home pay was reduced.

Debtor filed the present Motion for Sanctions on December 21, 2006, which asks the Court to sanction the Attorney General and, its agent, Troy V. Smith, for willful violation of the automatic stay and to require the return the funds that have been garnished since the Bankruptcy filing.  The Attorney General responded to the motion, and stated that due to the Notice of Correction, the Writ was withdrawn on December 20,

2006. Mr. George M. Barnes, Assistant Attorney General, Child Support Division, appeared at the hearing on the motion and stated that the Attorney General agreed to return to the Debtor any money withheld under the Writ, and argued that the actions taken did not violate the provisions of § 362, because they were authorized by the exception found in § 362(b)(2)(C).

## III.   ANALYSIS

*Section 362(b)(2)(C)*

Bankruptcy Code Section 362(a) provides for an "automatic stay" of certain acts upon the filing of a petition under any chapter of the Bankruptcy Code. *See* 11 U.S.C. § 362(a). In relevant part, the Bankruptcy Code automatic stay provision provides:

> (a) [A] petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; and
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a). Enumerated exceptions to the automatic stay are found in § 362(b). The automatic stay is designed to protect creditors as well as debtors. *See In re HSM Kennewick, L.P.*, 347 B.R. 569, 571 (Bankr. N.D. Tex. 2006). The stay prevents creditors from scrambling to collect a debtor's limited assets and provides "breathing room" for a debtor and the bankruptcy court to institute an organized repayment plan and

allows for the equitable disbursement of estate property among creditors. *See In re Chesnut,* 422 F.3d 298, 301 (5th Cir. 2005); *see also*, *In re Stembridge,* 394 F.3d 383, 387 (5th Cir. 2004); *Reliant Energy Servs., Inc. v. Enron Can. Corp.,* 349 F.3d 816, 825 (5th Cir. 2003).

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, 119 Stat. 23 (2005), ("BAPCPA") made many changes to existing bankruptcy law, notably to the automatic stay provisions of section 362, and in the protections afforded "domestic support obligations."

The term "domestic support obligation" is a new term introduced by the BAPCPA. Commentators have opined that the phrase includes the categories of alimony, maintenance, or support that were incorporated under the previous version of section 362(b)(2). *See, e.g.,* David B. Young, *Overview of Changes to the Automatic Stay Under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005*, 887 PLI/COMM 411, 470 (2006). Importantly, "domestic support obligations" are not necessarily limited to post petition claims, for the Bankruptcy Code defines a domestic support obligation as a "debt that accrues before, on, or after" the petition date. 11 U.S.C. § 101(14A) (2006). With the enactment of the BAPCPA the automatic stay became narrower, and exceptions to the stay became broader. Henry E. Hildebrand, *Impact of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 on Chapter 13 Trustees*, 79 AM. BANKR. L.J. 373, 382 (2005).

The Bankruptcy Code now excludes a number of domestic relations proceedings from the automatic stay, and clarifies and expands the scope of existing exceptions from the stay under section 362(b)(2), apparently in keeping with "BAPCPA's general effort to

give special treatment to family and domestic obligations in bankruptcy." Young, *supra*, at 470.  By not allowing the stay to apply to an order withholding support payments from a debtor's wages, support payments are easier to collect while protecting the spouses (usually women) and children that depend on this financial support.  Kristin Brandser Kalsem, *Bankruptcy Reform and the Financial Well-being of Women:  How Intersectionality Matters in Money Matters*, 71 BROOK. L. REV. 1181, 1204, 1206 n.109 (2006).

Where the debtor's post-confirmation wages are provided for in and used to fund a plan, they are considered property of the estate, s*ee In re Lambright*, 125 B.R. 733, 735 (Bankr. N.D. Tex. 1991).  Thus, under prior law, courts held that the exception to the stay provided in § 362(b)(2)(B) for the collection of a domestic support obligations had little effect in Chapter 13 proceedings, because § 362(b)(2)(B) only applied to collection efforts made against property that is not property of the estate.  *See*, *e.g.*, *In re Johnston*, 321 B.R. 262, 278 (D. Ariz. 2005).  However, section 362(b)(2)(C) effectively overrules such cases, to the extent that the estate property consists of the debtor's income, by creating an exception to the stay for the withholding of such income for payment of a domestic support obligation under a judicial or administrative order or a statute.  Alan N. Resnick & Henry J. Sommer eds., Collier on Bankruptcy ¶ 362.05[2] (15th ed., rev. 2006).

In the present case, the arrears at issue are child support obligations, which qualify as a domestic support obligation as defined under section 101(14A).  Under Bankruptcy Code Section 362(b)(2)(C) the automatic stay does not stay any matter "with respect to the withholding of income that is property of the estate or property of the

debtor for payment of a domestic support obligation under a judicial or administrative order or a statute." 11 U.S.C. § 362(b)(2)(C). Although both parties to the current dispute claim this language is somewhat ambiguous, it seems clear to this Court that Congress did not intend to automatically stay the collection of a domestic support obligation, whether it arises from a pre or postpetition garnishment action from property of the estate or property of the debtor. *See* H.R. REP. NO. 109-31, 109th Cong., 1st Sess. § 214 (2005). According to the legislative history of this amendment, support, owed before, during, or after filing, garnished from an employee's wages and paid to the support creditor will not be interrupted, thus ensuring full payment of the support obligations. Philip L. Strauss, *Treatment of Child Support Claims Under the Proposed Reform Act*, 22-MAY AM. BANKR. INST. J. 6 p.46 (2003).

Under the facts of the present case, Debtor was obligated to pay the child support due, and according to section 362(b)(2)(C), the automatic stay had no bearing on the garnishment action by the Attorney General for collection of the domestic support obligation.

*Violation of the Confirmation Order?*

While no stay violation has occurred, the State of Texas has a problem with its garnishment not fully articulated by Debtor in his pleadings, but only hinted at it during argument. Both Debtor and the Attorney General are now bound by the terms of the confirmed Plan because the provisions of a confirmed Chapter 13 plan "bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). As the court explained in *In re Murray* 350 B.R. 408 (Bankr. S.D.

Ohio 2006), "[t]his binding effect of confirmation has led courts to conclude that proceedings inconsistent or incompatible with the confirmed plan are improper." *Id*. at 418. Furthermore, an order confirming a Chapter 13 plan is *res judicata* regarding all issues that could have been decided at the confirmation hearing. *See Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1049-50 (5th Cir. 1992); *see also*, Alan N. Resnick & Henry J. Sommer eds., 8 Collier on Bankruptcy ¶ 1327.01[1] (15th ed., rev. 2006).

Since § 1327(a) prohibits any creditor from asserting any additional interest than those provided for in the plan after confirmation, § 1327(a) and the general doctrine of *res judicata* serve the same purpose. *In re Layo*, 460 F.3d 289, 293 (2d Cir. 2006). The confirmation order must provide finality so that all parties may rely on it without concern that later actions could result in a subsequent change or revocation of the order. *Id*. This is the objective of the confirmation process, to achieve finality. *See In re Sanders*, 243 B.R. 326, 331 (Bankr. N.D. Ohio 2000). "'Confirmation is the bright line in the life of a Chapter 13 case at which all the important rights of creditors and responsibilities of the debtor are defined and after which all rights and remedies must be determined with reference to the plan.'" *Id*. (quoting Keith M. Lundin, CHAPTER 13 BANKRUPTCY, § 6.9, 6-4 and 6-5 (2d ed. 1997).

In this case, the Attorney General denies that garnishing the Debtor's wages violated the automatic stay, acting under the exception in 11 U.S.C. § 362(b)(2)(C) of the Bankruptcy Code. That position appears correct. However, as described previously, after confirmation, the terms of the plan and the confirmation order control. Here, the confirmed Plan indicates that Debtor would pay the claim at issue, the pre-petition arrears, in monthly payments under the Plan.. There was not a provision in the Plan

allowing the Attorney General to garnish the Debtor's wages. In fact, because there are other creditors in this case, the Plan suggests otherwise. Therefore, garnishment for pre-petition arrears would be contrary to the Confirmation Order and section 1327.

The Attorney General denies allegations of malicious actions in the withholding of income from Debtor. Primarily the Attorney General took these actions relying on section 362(b)(2)(C) of the United States Bankruptcy Code. After discussions with Debtor's counsel, the Attorney General has agreed to promptly refund the amounts it garnished to allow the Debtor to comply with his Plan. As was mentioned in open court, this is not, therefore, a case for sanctions against any party.

### IV.    CONCLUSION

Section 362(b)(2)(C) acts as an exception to the automatic stay in a bankruptcy proceeding for the withholding of the domestic support obligation at issue. However, under section 1327 of the Bankruptcy Code, the provisions of a confirmed Chapter 13 plan are *res judicata* and bind all creditors, including, in this case, the State of Texas. The Attorney General and Troy V. Smith did not have authority to act contrary to the provisions of the confirmed Plan. Because the actions were not willful and because the State has agreed to promptly refund the garnished funds to the Debtor, no sanctions are in order. For the reasons set forth in this opinion, the court denies Darrold O'Keith Gellington's Motion for Sanctions. The State has agreed to return the amounts it garnished to the Debtor.